## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**SHERRIN M. SCHUHARDT,**

      **Plaintiff,**

**vs.**                                   **CASE NO. 1:07cv14-MP/WCS**

**MICHAEL J. ASTRUE,[1]**
**Commissioner of Social Security,**

      **Defendant.**

_____/


## REPORT AND RECOMMENDATION

      This is a social security case referred to me for a report and recommendation

pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D).  It is recommended that the

decision of the Commissioner be affirmed.

**Procedural status of the case**

      Plaintiff, Sherrin M. Schuhardt, applied for disability insurance benefits and

supplemental security income benefits.  She was 48 years old at the time of the first

---

    [1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007,
and is automatically substituted as Defendant.  Fed. R. Civ. P. 25(d).

administrative hearing,[2] had an associate degree in nursing, and had past relevant work as a nurse, receptionist, billing clerk, assistant manager in a fabric store, and office worker.  Plaintiff alleges disability due to cervical and thoracic degenerative disc disease, carpal tunnel syndrome, myofascial pain, and chronic cervicalgia.

The ALJ found that Plaintiff had the residual functional capacity to sit for 6 to 8 hours, stand for 2 to 3 hours, walk for 2 to 3 hours, and occasionally lift or carry 10 to 15 pounds, and thus had the capacity to do sedentary work.  R. 18.  The ALJ found that Plaintiff's past relevant work as a billing clerk required her to work in a seated position, entering data into a computer, writing reports, copying, faxing, and answering telephone calls.  R. 19.  He concluded that Plaintiff could do her past relevant work as a billing clerk, and was not disabled as defined by Social Security law.  R. 20.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002).  "If the Commissioner's decision is supported by substantial evidence we must

---

[2] There were two administrative hearings.  R. 269-290; R. 291-309.

affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial

deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005).  "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ.  A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ."  Tieniber

v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983).  "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously

probative exhibits, to say that his decision is supported by substantial evidence

approaches an abdication of the court's 'duty to scrutinize the record as a whole to

determine whether the conclusions reached are rational.' "  Cowart v. Schweiker, 662

F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do his previous work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must

be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122

S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.      Is the individual currently engaged in substantial gainful activity?

2.      Does the individual have any severe impairments?

3.      Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.      Does the individual have any impairments which prevent past relevant work?

5.      Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal Analysis**[3]

**Whether the Administrative Law Judge failed to give sufficient
weight to the opinion of Plaintiff's treating physicians, Dr. Oscar
DePaz and Dr. Rigoberto Pulente-Guzman**

The opinion of a claimant's treating physician must be accorded considerable

weight by the Commissioner unless good cause is shown to the contrary.  Lewis v.

Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).  The reasons for giving little weight to

the opinion of a treating physician must be supported by substantial evidence.  Marbury

v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

The opinions cited by Plaintiff for this claim are apparently contained in the

medical records dated December 12, 2003, through March 13, 2005, since those

records are mentioned by Plaintiff in her memorandum.  Doc. 15, p. 10.  There is no

opinion by a Dr. Pulente-Guzman in the medical records dated from December 22,

2003, through August 5, 2005.  Doc. 20, R. 310-344.  These supplemental records do

contain a residual functional capacity evaluation prepared by Dr. DePaz, a treating

physician, dated March 13, 2006, R. 310-313, and that opinion is probably the opinion

meant by Plaintiff as support for this claim.

Dr. DePaz believed that Plaintiff could sit for 2 to 3 hours at one time and could

sit for a total of 5 to 6 hours a day.  R. 310.  He said that Plaintiff could also stand for 1

to 2 hours at a time, and could do so for a total of 6 to 7 hours in a day.  R. 311.  He

---

[3] Descriptions of the purpose and effects of prescribed drugs are from PHYSICIANS'
DESK REFERENCE, as available to the court on Westlaw.  Only the PDR 2005 and earlier
are available to the court.  Medical terms come from DORLAND'S ILLUSTRATED MEDICAL
DICTIONARY, available at:  http://www.mercksource.com (Medical Dictionary link).

thought that the Plaintiff could alternatively sit or stand for a total of 6 to 7 hours a day, and could frequently carry 5 to 9 pounds. *Id.* He said that these limitations were due to a chronic cervical spine condition. *Id.*

The medical records of treatment from Dr. DePaz contain the following. On December 23, 2003, Dr. DePaz said that a September 17, 2003, MRI revealed "mild multilevel degenerative disc disease worse at C6-7. Mild degree of central canal narrowing at this level with no significant neural foraminal compromise. No disc protrusion seen. Mild multilevel bilateral facet arthritis." R. 341. The only work limitations Dr. DePaz noted, however, were to avoid activities requiring prolonged neck flexion, extension, or repetitive neck motion, and overhead work. *Id.* On January 12, 2004, Plaintiff had nerve conduction velocity and EMG[4] studies of her arms and wrists. R. 335-336. The results were normal. *Id.*

On February 9, 2004, Dr. DePaz again said that the only work limitations that Plaintiff had were to do no work requiring prolonged neck flexion, extension, or motion, and no over head work. R. 334. On April 26, 2004, Plaintiff declined surgical intervention. R. 332.

On August 17, 2004, Plaintiff said that Percocet[5] had helped her pain without side effects, but the relief did not last long. R. 328. The dosage of Percocet was

---

[4] Electromyography, that is, an electrodiagnostic technique for recording the extracellular activity of skeletal muscles at rest, during voluntary contractions, and during electrical stimulation. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

[5] Percocet contains oxycodone and acetaminophen. Oxycodone is an opioid similar to morphine, and also similar to codeine and methadone. PHYSICIANS' DESK REFERENCE (2005).

increased.  R. 329.  On November 1, 2004, Dr. DePaz noted that the Percocet dosage

helped and now was long lasting.  R. 324.  Dr. DePaz wrote on December 28, 2004,

that Percocet continued to help without side effects.  R. 322.  On August 5, 2005, Dr.

DePaz discontinued Vicodin[6] and destroyed 29 hydrocodone pills.  R. 315.  Percocet

was continued.  *Id.*  Percocet was found to last 10 to 12 hours and helped Plaintiff

sleep, while the hydrocodone had lasted only 3 to 4 hours.  R. 314.

The ALJ discussed the medical records of Dr. DePaz.  R. 19.  He found that the

MRI studies did not show any focal disc protrusion and no obvious effect on the spinal

cord.  *Id.*  He said that in February, 2004, Plaintiff was not interested in a surgical

consultation.  *Id.*  He found that the only limitations placed upon Plaintiff were to avoid

activities involving prolonged neck flexion, extension, or repetitive neck motion, and no

overhead work.  *Id.*  Finally, he found that in late 2005, Plaintiff reported 10 to 12 hour

pain relief with Percocet.  *Id.*  All of these findings are supported by substantial evidence

in the record discussed above.

The ALJ also discussed the residual functional capacity opinion of Dr. DePaz.  R.

19.  He noted that Dr. DePaz had found that Plaintiff was able to lift up to 9 pounds

frequently, could stand for up to 2 hours at a time, and could sit for 6 hours, sitting 3

hours at a time.  *Id.*  He then assumed that a 5 minute stretch break would be permitted

each hour.  *Id.*  These findings likewise are supported by substantial evidence in the

record discussed above.  While Dr. DePaz had also said that Plaintiff could alternatively

---

[6] A brand name for hydrocodone.  Hydrocodone is a semisynthetic narcotic derivative of codeine having sedative and analgesic effects more powerful than those of codeine.  DORLAND'S ILLUSTRATED MEDICAL DICTIONARY.

sit or stand for only 6 to 7 hours in an 8 hour work day, it is reasonable to assume that 5 minute stretch breaks and a lunch period would bring that total to close to a full 8 hours. This is not inconsistent with the residual functional capacity that the ALJ assigned to Plaintiff.  In summary, the ALJ did not fail to give significant weight to the medical findings and opinion of the treating physician, Dr. DePaz.

### Whether the ALJ properly weighed the credibility of Plaintiff's subjective evidence of pain

Pain and other symptoms reasonably attributed to a medically determinable impairment are relevant evidence for determining residual functional capacity.  Social Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing:  (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated for disregarding the claimant's subjective pain testimony must be based upon substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d 1529, 1532 (11th Cir. 1991).

The record contains substantial evidence to discount Plaintiff's testimony.  The nerve conduction velocity and EMG studies of Plaintiff's upper extremities did not show

acute or chronic radiculopathy.  The cervical spine MRI of September 17, 2003,

revealed only mild degenerative disc disease and mild central canal narrowing with no

significant neural foraminal compromise.  Dr. DePaz, a treating physician, essentially

said that Plaintiff was capable of doing sedentary work.  Plaintiff's pain medications,

while strong and indicative of the experience of significant pain, were found by Dr.

Depaz to be helpful, had no side effects, and provided long lasting relief.  That Dr.

Nazario found that Plaintiff had an anxiety disorder due to chronic pain, as discussed

ahead, is some evidence to support a contrary conclusion.  But this court's role is limited

to determining whether the decision is supported by substantial evidence.  Plaintiff's

argument as to the lack of substantial evidence to discount Plaintiff's subjective

testimony is unpersuasive.

### Whether the ALJ failed to fairly develop the record by obtaining a mental residual functional capacity assessment from Dr. Nazario

Plaintiff notes that Dr. Nazario entered a diagnosis of anxiety disorder due to a

medical condition, chronic pain, citing to R. 182.  Plaintiff argues that the record is

incomplete, that the question of whether Plaintiff has "the ability to show up in a timely

manner and then work 8 hours a day, 5 days a week," is not known because the ALJ

did not have Dr. Nazario complete a mental residual functional capacity assessment

form.  Doc. 15, p. 16.  Plaintiff contends that the ALJ should have obtained this

assessment.

Dr. Andres Nazario found during his examination that Plaintiff's mood was

"somewhat anxious," though her affect was appropriate.  R. 182.  She was oriented to

person, place, and time; and her memory, both recent and remote, appeared to be

intact.  *Id.*  He found that "[s]he demonstrated the ability to concentrate during the interview.  She was persistent in her approach, and her pace appeared adequate."  *Id.*  Dr. Nazario felt that Plaintiff's judgment and insight seemed to be good.  *Id.*  His diagnosis was anxiety disorder due to a medical condition, chronic pain.  *Id.*  He concluded that Plaintiff "appears able to concentrate, able to understand and follow directions.  She appears able to interact with others appropriately."  R. 183.

"Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits . . . ."  Sims v. Apfel,  530 U.S. 103, 110-111, 120 S.Ct. 2080, 2085, 147 L.Ed.2d 80 (2000), citing Richardson v. Perales, 402 U.S. 389, 400-401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a *basic* obligation to develop a full and fair record."  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997) (emphasis added), *citing*, Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  This basic duty exists whether or not the claimant is represented.  Brown v. Shalala, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted).  Additional evidence, however, is not necessary if the record contains sufficient evidence to make a decision.  Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999).

The basic duty to develop a fair record becomes a special duty when a claimant has not waived a right to counsel.  "A Social Security claimant has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ."  Brown v. Shalala, 44 F.3d at 934 (11th Cir. 1995), citing Smith v. Schweiker, 677 F.2d

826 (11th Cir. 1982) and 42 U.S.C. § 406.  Where the right to representation has not

been waived,

> the hearing examiner's obligation to develop a full and fair record rises to a
> special duty.  This *special duty* requires, essentially, a record which shows
> that the claimant was not prejudiced by lack of counsel.  In carrying out
> this duty, the ALJ must "scrupulously and conscientiously probe into,
> inquire of, and explore for all the relevant facts."

Brown v. Shalala, 44 F.3d at 934-935, quoting Smith v. Schweiker, 677 F.2d at 829

(citations omitted, emphasis added).  It is not necessary "to determine that the presence

of counsel would necessarily have resulted in any specific benefits in the handling of the

case before the ALJ."  *Id.*  "Nevertheless, there must be a showing of prejudice before

we will find that the claimant's right to due process has been violated to such a degree

that the case must be remanded to the Secretary for further development of the record."

*Id.*  The court should be guided by "whether the record reveals evidentiary gaps which

result in unfairness or 'clear prejudice.' "  *Id.* ; Graham v. Apfel,129 F.3d at 1423.

Plaintiff waived her statutory right to counsel at the first hearing and was

represented by a lawyer at the second hearing.  R. 271, 293.  Thus, the Administrative

Law Judge had only the basic duty to prepare a fair record.  Dr. Nazario found that she

was able to concentrate, remember, persist in an activity, and interact with others.  The

examination by Dr. Nazario provided sufficient information to conclude that Plaintiff was

not precluded from working a full 8 hour day due to an anxiety disorder.  Therefore, the

ALJ did not fail in his basic duty to prepare a fair record.

**Conclusion**

Case No. 1:07cv14-MP/WCS

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and are based upon substantial evidence in the record.  The decision of the Commissioner should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 22, 2007.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**